THE RAUH REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32822.    Promulgated May 11, 1932.

*Frank C. Olive, Esq.*, and *George S. Olive, C. P. A.*, for the petitioner.

*James L. Backstrom, Esq.*, for the respondent.

Petitioner is an Indiana corporation, with its principal office at the Union Stock Yards in Indianapolis.

OPINION.

Love: As previously stated, the only issue involved in this proceeding is whether petitioner sustained a loss upon the exchange of three pieces of real estate acquired after March 1, 1913, having a net depreciated cost of $40,780.77, and $14,000 in cash for all the common stock of the Fishback Realty Company.

Section 202 (a) of the Revenue Act of 1926, provides:

Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision ,(a) or (b) of section 204, and the *loss* shall be the excess of such *basis* over the *amount realized.* [Italics supplied.]

The *basis* provided in subdivision (a) of section 204, as diminished by the deductions provided for in section 202 (b) (2), is the amount of $54,780.77, upon which the parties hereto are agreed.

Section 202 (c) provides:

The *amount realized* from the sale or other disposition of property shall be the sum of any money received plus the *fair market value* of the *property* (other than money) *received.* [Italics supplied.]

The question thus narrows itself to what the " fair market value " of the common stock of the Fishback Realty Company was on December 17, 1925, within the meaning of that term as used in section 202 (c), *supra.*

With respect to the fair market value of the stock, there were no sales either prior or subsequent to December 17, 1925, the date in question. Neither were there any offers therefor. Under such circumstances, the rule most generally applied is to determine the fair market value of the assets behind the stock. The only asset owned by the Fishback Realty Company was the Fishback property. As far as the fair market value of the stock is concerned, the question is, therefore, finally narrowed to the determination of the fair market value of the Fishback property on December 17, 1925. In this connection, we are satisfied from the testimony of three well qualified and experienced real estate men, who had been engaged in the real estate business in Indianapolis for from 30 to 47 years, that the fair market value of the Fishback property on December 17, 1925, was $109,200, allocated $73,500 to the preferred stock, and $35,700 to the common stock. We, therefore, find that the fair market value of the common stock of the Fishback Realty Company received by petitioner on December 17, 1925, was $35,700.

At and before the date of acquisition by petitioner of the common stock of the Fishback Realty Company, petitioner owned the property north of the Fishback property and also the property south of said property. The property in that vicinity, being alongside the railroad tracks, was suitable only for warehouse purposes, and was designated locally as switch property. The Fishback property, alone, was too small to permit a switch being constructed on it, and, hence, not very desirable property. Used in connection with petitioner's properties, it is desirable switch property. In view of the situation and the history involved in the transactions here being considered, we believe that all the parties concerned had in mind at all stages of such transactions the acquisition by petitioner of the Fishback property, the liquidation of the Fishback Realty Company corporation, and the cancellation of the leasehold.

However, the acquisition of the leasehold was by an assignment dated December 14, 1925, and the consideration named therein was the assumption on the part of petitioner of all the obligations named in the lease contract and theretofore carried by the original lessee. The assignment of the common stock in question was evidenced by a document dated December 17, 1925, and the consideration named therein was the properties listed in our findings of fact. The leasehold in question did not form a part of such consideration.

In view of the fact that the net worth of the Fishback property on December 17, 1925, after deducting the amount of outstanding preferred stock, was $35,700, we have found that amount to be the fair market value of the common stock, and since that common stock was acquired in exchange for property whose depreciated cost was

$54,780.77, it follows that petitioner suffered a loss of the difference, that is, $19,080.77.

We will now consider, briefly, petitioner's alternative proposition which in effect is that, if it be held that the acquisition by petitioner of the common stock and the acquisition of the leasehold constituted one and the same transaction, the leasehold had no fair market value, and, hence, was nil in the transaction, in which situation the result is the same.

Under the terms and conditions of the lease contract, from the lessor's standpoint, there was no net income, for the reason that all the rentals were dedicated to the payment of the current obligations of the lessor, whose asset was the property here involved, and were limited to the amount thereof. There could be no net income from the leasehold to the lessor. By net income we do not mean no taxable income, but mean no income in excess of correlated obligations.

From the standpoint of the lessee, the leasehold had no value, for the reason that the annual rentals far exceeded the actual rental value of the premises. From the lessee's standpoint, it was a liability rather than an asset.

At the rehearing, petitioner submitted the testimony of William T. Rasmussen, who has been in the real estate business in the city of Indianapolis, Indiana, for more more than thirty years, and thoroughly qualified as an expert witness on the subject of leasehold valuations in that city. The substance of his testimony was that the leasehold in question, under the circumstances and conditions involved, had no value whatever. Hence, even if the leasehold were held to have been included in the deal, as it had no value, it follows that what the petitioner received in the exchange was worth $19,080.77 less than the depreciated cost of the property it gave, and that, therefore, it suffered a loss in that amount.

In view of the fact that the issue involved in this proceeding does not account for the total amount of the deficiency determined for the year 1925,

*Judgement will be entered under Rule 50.*